IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EVA HODGES, *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING, and THE BANK OF NEW YORK MELLON,<br><br>Defendants. | Case No. 1:25-cv-10147-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1
FACTUAL ALLEGATIONS ............................................................................................... 1
STANDARD OF REVIEW .................................................................................................. 3
ARGUMENT ........................................................................................................................ 4
I.   PLAINTIFF'S FDCPA CLAIMS (COUNTS II & VI) AGAINST SHELLPOINT FAIL AS A MATTER OF LAW AND MUST BE DISMISSED. ............................................... 4
II.  PLAINTIFF'S MASSACHUSETTS STATE LAW CLAIMS (COUNTS III & IV) FAIL BECAUSE THERE IS NO TILA VIOLATION. ............................................................. 8
III. PLAINTIFF'S DECLARATORY JUDGMENT CLAIM (COUNT I) MUST BE DISMISSED BECAUSE THERE IS NO ACTUAL CONTROVERSY. ......................... 9
IV.  THE CLASS CLAIMS SHOULD BE DISMISSED. ........................................................ 11
CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................... 3

*Best v. NewRez LLC*,
    No. GJH-19-2331, 2020 WL 5513433 (D. Md. Sept. 11, 2020) ............................................ 5

*In re Cahill*,
    642 B.R. 813 (Bankr. N.D. Ill. 2022) ................................................................................... 10

*Chandler v. Greenlight Fin. Servs.*,
    No. 2:20-cv-00217, 2021 WL 1202078 (S.D.W. Va. Mar. 30, 2021) ..................................... 5

*Cranmore v. Wells Fargo Bank, N.A.*,
    410 F. Supp. 3d 336 (D. Mass. 2019) .................................................................................... 8

*DeCotis v. Specialized Loan Servicing LLC*,
    642 F. Supp. 3d 181 (D. Mass. 2022) .................................................................................... 8

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ............................................................................................................. 11

*Icarom, PLC v. Howard Cty., Md.*,
    904 F. Supp. 454 (D. Md. 1995) ............................................................................................ 9

*Jones v. Hobbs*,
    745 F. Supp. 2d 886 (E.D. Ark. 2010) ................................................................................. 10

*Ka Lok Lau v. Holder*,
    880 F. Supp. 2d 276 (D. Mass. 2012) .................................................................................. 10

*Kellar v. Fin. Recovery Servs., Inc.*,
    No. 1:12-CV-097, 2014 WL 129239 (D.N.D. Jan. 9, 2014) ............................................. 6, 7

*Langadinos v. Am. Airlines, Inc.*,
    199 F.3d 68 (1st Cir. 2000) .................................................................................................... 3

*Large v. LVNV Funding, LLC*,
    No. 1:09-CV-689, 2010 WL 3069409 (W.D. Mich. Aug. 2, 2010) ....................................... 7

*Lee v. Northland Grp.*,
  No. 02 C 6083, 2003 WL 25765398 (N.D. Ill. Apr. 24, 2003)..................................................6

*McGhee v. Buffalo & Assocs., PLC*,
  922 F. Supp. 2d 674 (E.D. Tenn. 2013) .......................................................................................7

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)....................................................................................................................10

*Naranjo v. Bank of Am.*,
  No. 23-546-KK-ASx, 2024 WL 1651914 (C.D. Cal. Feb. 23, 2024).........................................5

*Neff v. Cap. Acquisitions & Mgmt. Co.*,
  238 F. Supp. 2d 986 (N.D. Ill. 2002) ..........................................................................................6

*O'Connor v. Nantucket Bank*,
  992 F. Supp. 2d 24 (D. Mass. 2014) ...........................................................................................8

*Ocasio-Hernandez v. Fortuno-Burset*,
  640 F.3d 1 (1st Cir. 2011) ...........................................................................................................4

*Peters v. Fin. Recovery Servs., Inc.*,
  46 F. Supp. 3d 915 (W.D. Mo. 2014) .........................................................................................6

*Phillips v. Ford Motor Co.*,
  435 F.3d 785 (7th Cir. 2006) ....................................................................................................11

*Richards v. NewRez LLC*,
  No. CV ELH-20-1282, 2021 WL 1060286 (D. Md. Mar. 18, 2021).........................................5

*Rivera v. NCB Mgmt. Servs., Inc.*,
  No. 3:23-CV-00221-MPS, 2023 WL 7553051 (D. Conn. Nov. 14, 2023)...............................7

*Robb v. Cap. Acquisitions & Mgmt. Co.*,
  No. 02 C 4829, 2002 WL 31654941 (N.D. Ill. Nov. 21, 2002)..................................................6

*Shilo v. Ditech Fin. LLC*,
  No. CV 16-11564, 2017 WL 3202725 (D. Mass. July 26, 2017) ..............................................5

*Taylor v. U.S. Bd. of Parole*,
  194 F.2d 882 (D.C. Cir. 1952)...................................................................................................10

*Walls v. Wells Fargo Bank, N.A.*,
  276 F.3d 502 (9th Cir. 2002) ......................................................................................................5

**Statutes**

15 U.S.C. § 1602....................................................................................................................................7

15 U.S.C. § 1638 ...................................................................................................................5

15 U.S.C. § 1641 ...................................................................................................................5

15 U.S.C. § 1692 ................................................................................................................4, 5

28 U.S.C. § 2201 ...............................................................................................................9, 10

Mass. Gen. Laws ch. 93A ..................................................................................................8, 9

**Regulations**

209 Mass. Code Regs. 18.00 ................................................................................................8

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................................1, 3

Defendants NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and The Bank of New York Mellon ("BNYM") (collectively, "Defendants"), by counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Amended Class Action Complaint.

## INTRODUCTION

All of Plaintiff's claims are predicated on the same underlying conduct – Defendants' alleged failure to provide periodic statements for her second mortgage that was discharged in bankruptcy. Of the many statutes and regulations cited in support of Plaintiff's claims, none impose an affirmative obligation to provide periodic mortgage statements. That purported duty comes from the TILA—the Truth in Lending Act—and TILA only. However, because TILA liability only extends to creditors and assignees under certain circumstances not present here, Plaintiff does not have a viable TILA claim against Defendants BNYM and Shellpoint. Tellingly, Plaintiff voluntarily disposed of her TILA claim in amending her complaint after being presented with Defendants' first motion to dismiss. Undeterred, Plaintiff attempts to shoehorn the non-existent TILA violation into claims by other names, but courts have long rejected attempts to assert causes of action predicated on a non-viable TILA claim. This Court should reject Plaintiff's attempts as well and dismiss the complaint with prejudice.

## FACTUAL ALLEGATIONS[1]

In March 2005, Plaintiff obtained a Home Equity Line of Credit ("HELOC") second mortgage on her home originated by Countrywide Home Loans. ECF 24 ¶¶ 4, 42. BNYM is the assignee and the current holder of Plaintiff's HELOC. *Id.* ¶ 6. Plaintiff made payments on the HELOC until October 2007, when she suffered financial difficulties and could no longer afford

---

[1] The following facts from Plaintiff's Amended Class Action Complaint are taken as true for the purposes of this Motion only.

the monthly payments. *Id.* ¶ 44. Due to ongoing financial struggles, Plaintiff filed for Chapter 7 bankruptcy and received a discharge on her HELOC on December 11, 2008. *Id.* ¶ 45. Following the bankruptcy discharge, Plaintiff stopped receiving periodic mortgage statements regarding her HELOC. *Id.* ¶ 47.

Specialized Loan Servicing, LLC ("SLS") became the servicer of Plaintiff's loan on October 1, 2013. *Id.* ¶ 48. Plaintiff had no communications with SLS regarding her HELOC until January 23, 2024, when she received a Notice of Default and Intent to Foreclose. *Id.* ¶ 50-51. The notice stated that Plaintiff needed to pay $152,820.46 to cure the arrearage on the HELOC or her home would be referred to foreclosure. *Id.* ¶ 52. The arrearage balance included $100,000 in fees and interest that had accrued during the period in which no statements were sent. *Id.* ¶ 53.

In response to the notice of intent to foreclose, Plaintiff wrote to Shellpoint[2] explaining that she did not understand how she was at risk for foreclosure because the debt had been discharged and no statements or other communications had been sent since. *Id.* ¶ 56. Shellpoint responded that billing statements were discontinued because of the bankruptcy discharge, and Plaintiff still owed the stated amounts on the second loan. *Id.* ¶ 57. Shellpoint's response also included a payoff quote, which reflected a total amount due of $200,090.51 on the HELOC, including $100,151.68 in interest. *Id.* ¶ 58. As a result of Defendants' failure to send statements and their assessment of retroactive interest, Plaintiff alleges that she suffered damages, including the inability to restart making payments after the bankruptcy discharge, the inability to modify her loan and avoid foreclosure, lost equity in her home in the amount of $100,000, and significant stress as a result of the threatened foreclosure. *Id.* ¶ 60.

---

[2] Shellpoint's ultimate parent company acquired SLS and its portfolio of mortgages in May 2024. For purposes of this Motion, Defendant will refer to only Shellpoint, even if the alleged conduct involved SLS and occurred prior to the acquisition.

On January 21, 2025, Plaintiff filed a class action lawsuit against Shellpoint and BNYM. On March 31, 2025, Defendants moved to dismiss the Complaint as to all claims. On April 28, 2025, Plaintiff filed an Amended Class Action Complaint ("Amended Complaint"). The Amended Complaint raises five causes of action: **Count I**: Request for a Declaratory Judgment on behalf of the class against both Defendants; **Count II**: Violation of the Fair Debt Collection Practices Act ("FDCPA") on behalf of the class against Shellpoint; **Count III**: Violations of the Massachusetts Consumer Protection Act on behalf of the class against both Defendants; **Count IV**: Violations of Massachusetts Debt Collection Regulations on behalf of the class against both Defendants; and **Count VI**:[3] Violation of the FDCPA on behalf of Plaintiff individually against Shellpoint.

Defendants now move to dismiss the Amended Complaint with prejudice.

## STANDARD OF REVIEW

Dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6) is proper if the complaint fails to state a viable claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000). A claim is facially plausible if, after accepting as true all non-conclusory factual

---

[3] The Amended Complaint does not have a Count V.

allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

## ARGUMENT

Because all of Plaintiff's causes of action are predicated upon Defendants' purported violation of TILA, and Defendants cannot be liable for a TILA violation as a matter of law, all of her claims fail as a matter of law. The Amended Complaint should be dismissed in its entirety with prejudice.

### I. PLAINTIFF'S FDCPA CLAIMS (COUNTS II & VI) AGAINST SHELLPOINT FAIL AS A MATTER OF LAW AND MUST BE DISMISSED.

Plaintiff's FDCPA claims are based entirely on Shellpoint's purported violation of a completely separate statute, TILA, under which Shellpoint, as a mortgage servicer, cannot be held liable. After Defendants moved to dismiss the originally pled TILA claim, Plaintiff filed an amendment. The Amended Complaint does not directly allege a TILA violation and instead claims that Defendants' purported failure to send monthly statements as required by TILA constitutes an FDCPA violation.[4] But courts nationwide, including the First Circuit, have rejected such attempts to improperly backdoor a TILA claim when a TILA claim does not exist in the first place.[5]

---

[4] The Amended Complaint dropped the TILA claim (formerly Count I), and the state equivalent Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA") claim (formerly Count V) asserted in the original Complaint.

[5] Plaintiff's class FDCPA claim (Count II) alleges a violation of § 1692e(10) for "falsely representing that Ms. Hodges and the putative class members owed late fees and interest for the months that they were not sent monthly statements…" ECF 24 ¶ 79. Plaintiff's individual FDCPA claim (Count VI) alleges a violation of § 1692f(6) for Shellpoint sending an acceleration notice that "listed an inaccurate outstanding balance," because it included "interest and fees that had been assessed when no one was sending Ms. Hodges monthly statements." *Id.* at ¶¶ 53, 113. Because there is no meaningful distinction between these two claims, and they fail for the same reason, Defendants address them together.

TILA only applies to creditors, and it is well-settled that mortgage servicers that do not also own the loan are not "creditors," and therefore, cannot be liable under TILA. *See Shilo v. Ditech Fin. LLC*, No. CV 16-11564, 2017 WL 3202725, at *8 (D. Mass. July 26, 2017), *aff'd*, No. 17-1884, 2018 WL 11442317 (1st Cir. May 22, 2018) ("As Ditech is a servicer, and not a creditor or assignee, Shilo has failed to plead a violation for which Ditech may be liable under TILA."); *Best v. NewRez LLC*, No. GJH-19-2331, 2020 WL 5513433, at *31 (D. Md. Sept. 11, 2020) (explaining that Shellpoint as "a servicer cannot be held liable for breaching the obligation at § 1641(f)(2) because TILA only imposes liability on creditors and their assignees."); *see also Naranjo v. Bank of Am.*, No. 23-546-KK-ASx, 2024 WL 1651914, at *4 (C.D. Cal. Feb. 23, 2024) ("[A] servicer cannot be held liable under TILA unless the servicer also owns the subject loan."); *Chandler v. Greenlight Fin. Servs.*, No. 2:20-cv-00217, 2021 WL 1202078, at *17 (S.D.W. Va. Mar. 30, 2021) ("[A]s this court has observed, 'courts . . . have unanimously found that the section does not impose civil liability on servicers.'") (alterations in original) (citation omitted).

Knowing TILA is not actionable against mortgage servicers, Plaintiff instead frames Shellpoint's alleged TILA violation as an FDCPA violation. However, "courts have consistently ruled that the FDCPA 'is not properly used as an enforcement mechanism for the TILA,' especially where the plaintiffs could not succeed on a TILA claim, independently." *Richards v. NewRez LLC*, No. CV ELH-20-1282, 2021 WL 1060286, at *28 (D. Md. Mar. 18, 2021) (dismissing FDCPA claim where "Plaintiffs allege[d] that defendant violated 15 U.S.C. § 1692f by collecting fees and charges when it failed to provide timely periodic statements, as required by the TILA, 15 U.S.C. § 1638(f)") (quoting *Large v. LVNV Funding, LLC*, No. 1:09-CV-689, 2010 WL 3069409, at *4-5 (W.D. Mich. Aug. 2, 2010)); *see also Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002) ("[t]o permit a simultaneous claim under the FDCPA would allow through the back

door what [the plaintiff] cannot accomplish through the front door—a private right of action"); *cf. Kellar v. Fin. Recovery Servs., Inc.*, No. 1:12-CV-097, 2014 WL 129239, at *5 (D.N.D. Jan. 9, 2014) ("Kellar back-doors her TILA argument into her FDCPA claim . . .").

Multiple courts have rejected such attempts to use the FDCPA as a means to bring suit for nonexistent TILA violations. For instance, in *Neff v. Cap. Acquisitions & Mgmt. Co.*, 238 F. Supp. 2d 986, 992 (N.D. Ill. 2002), *aff'd*, 352 F.3d 1118 (7th Cir. 2003), the court ruled that a TILA claim for the failure to send periodic statements could not survive a motion to dismiss because the claim was pleaded against a non-"creditor" entity. *Id*. The complaint in *Neff* also alleged an FDCPA claim for the exact same conduct – the alleged failure to send periodic statements required by TILA. *Id*. at 992. The court rejected this theory:

> [T]he FDCPA does not place an affirmative obligation on a debt collector to, for example, send monthly statements. Because there is no affirmative obligation under the FDCPA to send monthly statements, and Neff does not allege deceptive or unfair practices independent of defendants' alleged TILA obligations, counts III and IV fail to state a claim upon which relief can be granted and therefore are dismissed.

*Id*. at 993; *see also Robb v. Cap. Acquisitions & Mgmt. Co.*, No. 02 C 4829, 2002 WL 31654941 at *5 (N.D. Ill. Nov. 21, 2002), *aff'd sub nom*. *Neff v. Cap. Acquisitions & Mgmt. Co.*, 352 F.3d 1118 (7th Cir. 2003) (same); *Lee v. Northland Grp..,* No. 02 C 6083, 2003 WL 25765398 at *1 (N.D. Ill. Apr. 24, 2003) ("Lee's FDCPA and ICFA claims are entirely predicated on her nonexistent TILA violation, and thus those claims must also be dismissed.").

The proposition that the FDCPA does not require debt collectors to send monthly statements (when there is no actionable TILA claim) has been reaffirmed by other courts over the years. For instance, in *Peters v. Fin. Recovery Servs., Inc.*, a court dismissed an FDCPA claim that was based on a debt collector's assessment of post-charge off interest without sending statements—an act that the plaintiff claimed violated TILA. 46 F. Supp. 3d 915, 917 (W.D. Mo.

2014). The *Peters* court held that the debt collector was not subject to TILA because it was not a "creditor" and therefore there was no viable derivative FDCPA claim:

> Plaintiff[] argues that Defendant was prohibited from charging interest at the statutory rate because Truth in Lending Act ("TILA") forbids charging *any* post charge-off interest. Even assuming that TILA does prevent post charge-off interest at both the statutory and the contractual rate, TILA does not apply in this situation. Defendant, a debt collector, charged the post charge-off interest. However, TILA only applies to "creditors" which refers only to: "a person who both (1) regularly extends ... consumer credit ... and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable...." 15 U.S.C. § 1602(g). Thus, Defendant does not fit within that definition and is not subject to TILA because Defendant is a debt collector and not the person to whom the debt was originally payable.

*Id.* at 917-918; *see also Rivera v. NCB Mgmt. Servs., Inc.*, No. 3:23-CV-00221-MPS, 2023 WL 7553051, at *7 (D. Conn. Nov. 14, 2023) ("NCB is not, however, subject to TILA's requirements because TILA only regulates creditors . . . . courts have repeatedly concluded that a debt collector is not a creditor subject to the requirements of the TILA.") (cleaned up); *Kellar,* 2014 WL 129239, at *5 ("TILA's disclosure requirements do not apply to the settlement offers made by a debt collector. FRS's failure to disclose TILA information in its settlement alternatives did not constitute a false, deceptive or misleading representation and was therefore not a violation of FDCPA.") (internal citations omitted); *Large*, 2010 WL 3069409, at *4-5 (finding claim for illegal offer under TILA to fail when brought under FDCPA); *McGhee v. Buffalo & Assocs., PLC*, 922 F. Supp. 2d 674, 679 (E.D. Tenn. 2013) (holding failure to send periodic statements in violation of TILA not actionable under FDCPA).

Plaintiff's FDCPA claims must be dismissed because they are based upon a nonexistent TILA violation. Plaintiff's only basis for alleging that the representations made by Shellpoint were false or misleading is that Plaintiff was not sent statements – *i.e.*, that Shellpoint violated TILA. No FDCPA provision supports the proposition that a debt collector cannot collect on a debt or

assert its intent to initiate foreclosure unless it furnishes the debtor with periodic statements, and there are no other allegations suggesting an unfair or deceptive collection practice independent of Shellpoint's purported failure to provide monthly statements. This Court should prohibit Plaintiff from using the FDCPA as an enforcement mechanism for the TILA and dismiss Counts II and VI.

## II. PLAINTIFF'S MASSACHUSETTS STATE LAW CLAIMS (COUNTS III & IV) FAIL BECAUSE THERE IS NO TILA VIOLATION.

Plaintiff brings two additional state claims under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("Chapter 93A") and the Massachusetts Debt Collection Regulations, 209 CMR 18.00 ("MDCR"). For the same reasons as stated above, Plaintiff's state claims, which are also entirely predicated on the nonexistent TILA violation, fail as well.

Chapter 93A generally prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Chapter 93A also serves as the enforcement mechanism for "the state counterpart" to the FDCPA, the Massachusetts Fair Debt Collection Practices Act, Mass. Gen. Laws ch. 93, § 49. *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 33 (D. Mass. 2014); *see also DeCotis v. Specialized Loan Servicing LLC*, 642 F. Supp. 3d 181, 189 (D. Mass. 2022) ("A violation of § 49 is cognizable only to the extent it forms a basis for liability with respect to a plaintiff's Chapter 93A claim."). Accordingly, the above analysis of Plaintiff's FDCPA claims applies with equal force to Plaintiff's Chapter 93A claim seeking to enforce the same alleged TILA violation. *See* Argument § I. Similarly, the MDCR prohibits unfair and deceptive acts in the "servicing of loans and collection of debts," among other things. 209 CMR 18.01. While the MDCR does not provide a private right of action, a violation of the MDCR is a *per se* violation of Chapter 93A. *Cranmore v. Wells Fargo Bank, N.A.*, 410 F. Supp. 3d 336, 341-42 (D. Mass. 2019).

Again, the only unfair or deceptive act or debt collection practice Plaintiff alleges (under either state law claim) is Defendants' alleged failure to provide periodic statements. *See* ECF 24 ¶ 87 (alleging Defendants "systematically and as a matter of routine practice fail[ed] to provide billing statements to consumers…"); *id.* ¶ 98 ("Massachusetts and federal law require periodic billing statements to be sent to Ms. Hodges and the class members."); *id.* ¶ 100 ("Despite the requirements to send regular and timely billing statements, SLS's policies and procedures prevented the sending of statements to Plaintiff and the putative class members whose debts had been discharged through bankruptcy."). For the same reasons Plaintiff cannot use the FDCPA to enforce TILA, Plaintiff cannot try to backdoor her (nonexistent) TILA claim into a 93A violation. Neither Chapter 93A nor the MDCR places an affirmative obligation on mortgage servicers (or assignees like BNYM) to send monthly statements. The obligation to provide statements comes from TILA and TILA only.

Because there is no affirmative obligation under Chapter 93A or MDCR to send monthly statements, and Plaintiff does not allege deceptive or unfair practices independent of Defendants' alleged failure to fulfill their TILA obligations, Counts III and IV fail to state a claim upon which relief can be granted and should be dismissed.

### III. PLAINTIFF'S DECLARATORY JUDGMENT CLAIM (COUNT I) MUST BE DISMISSED BECAUSE THERE IS NO ACTUAL CONTROVERSY.

Lastly, following the same pattern, Plaintiff seeks a declaration that, because Defendants purportedly failed to provide statements "in violation of federal and state law," Defendants have waived the fees and interest assessed to Plaintiff's loan during the period statements were not sent. *See* ECF 1 at ¶ 69. As discussed above, because there is no cognizable claim for a violation of TILA (or the state equivalent MCCCDA), there is no "violation of federal and state law" to redress,

and therefore no "actual controversy" between the parties exists. Thus, Plaintiff's declaratory judgment claim fails.

"Federal courts are authorized to issue declaratory judgments only in cases of actual controversy." *Icarom, PLC v. Howard Cty., Md.*, 904 F. Supp. 454, 457 (D. Md. 1995) (citing 28 U.S.C. § 2201(a) (1988)). When a complaint "seeks a declaratory judgment concerning matters which do not present an actual controversy it clearly fails to state a cause of action." *Taylor v. U.S. Bd. of Parole*, 194 F.2d 882, 883 (D.C. Cir. 1952). An Article III case or controversy has not arisen when "[n]o defendant has wronged the plaintiff or has threatened to do so." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 133 (2007) (citing *Willing v. Chicago Auditorium Ass'n*, 277 U.S. 274, 288 (1928)). When there is no case or controversy, any declaration of rights would amount to an "impermissible advisory opinion." *See In re Cahill*, 642 B.R. 813, 824 (Bankr. N.D. Ill. 2022); *Ka Lok Lau v. Holder*, 880 F. Supp. 2d 276, 282 (D. Mass. 2012) ("[T]here is no real and substantial controversy, which is a necessity for declaratory judgment. The court, therefore, sees no way to view the desired declaratory relief as anything other than an advisory opinion.").

Furthermore, "the Declaratory Judgment Act does not authorize actions to decide whether federal statutes have been or will be violated when no private right of action to enforce the statutes has been created by Congress." *Jones v. Hobbs*, 745 F. Supp. 2d 886, 893 (E.D. Ark. 2010), *aff'd sub nom. Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011). "To entertain, under the auspices of the Declaratory Judgment Act, a cause of action brought by private parties seeking a declaration that [a statute] has been violated would, in effect, evade the intent of Congress not to create private rights of action under those statutes and would circumvent the discretion entrusted to the executive branch in deciding how and when to enforce those statutes." *Id.* (rejecting a plaintiff's attempt "seek private enforcement of [] statutes by means of a declaratory judgment.").

Because there is no actionable TILA claim – the statute on which all of Plaintiff's contentions depend – no Defendant has wronged Plaintiff, and the requisite controversy has not arisen. Granting the requested declaration based on Defendants' non-violation of TILA would amount to an impermissible advisory opinion and potentially provide Plaintiff relief on a claim for which Congress intentionally has not created a private right of action against parties like Defendants. Plaintiff merely cloaks her TILA claim as a request for declaratory judgment, and the claim should be dismissed.

## IV. THE CLASS CLAIMS SHOULD BE DISMISSED.

Plaintiff has no viable claims; therefore, the claims brought on behalf of the class should be dismissed as well. "Strictly speaking, if no motion to certify has been filed (perhaps if it has been filed but not acted on), the case is not yet a class action and so a dismissal of the named plaintiffs' claims should end the case." *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006); *cf. Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("[A] class representative must be part of the class and possess the same interest and ***suffer the same injury*** as the class members.'") (emphasis added). Because there is no certified class and Plaintiff has not alleged a cognizable injury, the class is unsustainable and should be stricken.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants NewRez LLC d/b/a Shellpoint Mortgage Servicing and The Bank of New York Mellon respectfully request that the Court dismiss Plaintiff's Amended Class Action Complaint with prejudice.

[*signatures on following page*]

Dated: May 20, 2025    Respectfully submitted,

*/s/ Emily C. Shanahan*
Emily C. Shanahan (BBO# 643456)
**HUSCH BLACKWELL**
One Congress Street, Suite 3102
Boston, MA 02114
Phone: (617) 598-6727
Fax: (617) 598-6790
emily.shanahan@huschblackwell.com

Bryan E. Pumphrey (Admitted *Pro Hac Vice*)
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Phone: (804) 775-7745
Fax: (804) 698-2018
bpumphrey@mcguirewoods.com

Melissa O. Martinez (Admitted *Pro Hac Vice*)
**MCGUIREWOODS LLP**
500 E. Pratt Street, Suite 1000
Baltimore, Maryland 21202-3169
Phone: (410) 659-4432
Fax: (410) 659-4482
mmartinez@mcguirewoods.com

***Counsel for Defendants NewRez LLC d/b/a Shellpoint Mortgage Servicing and The Bank of New York Mellon***

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2025, a true copy of the above document, filed through the ECF system, will be served electronically through the ECF system on the registered participants as identified on the Notice of Electronic Filing ("NEF"), and that paper copies of the above document will be sent by first class mail to those identified as non-registered participants on the NEF on May 20, 2025.

                                                  */s/ Emily C. Shanahan*
                                                  Emily C. Shanahan (BBO# 643456)