**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**Eastern Division**

| | |
|---|---|
| EVA HODGES, *on behalf of herself and all others similarly situated*,<br><br>                              Plaintiff,<br><br>v.<br><br>NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING and THE BANK OF NEW YORK MELLON,<br><br>                              Defendants. | Case No. 1:25-cv-10147-ADB |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT (ECF NO. 27)**

Defendant Newrez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and The Bank of New York Mellon ("BONY") (collectively, "Defendants") retroactively assessed and collected hundreds of thousands of dollars in interest and fees from Massachusetts homeowners after years of no contact regarding the mortgages—sometimes over a decade. Although Defendants failed to send mortgage borrowers monthly statements or correspondence that would have put those borrowers on notice of allegedly accumulating debts, Defendants collected and continue to collect those amounts. Plaintiff, for example, received no monthly statements regarding her second mortgage for nearly 16 years. But in January 2024, Shellpoint sent her a foreclosure notice claiming: (i) that she owed approximately ***$100,000*** in retroactive interest and fees; and (ii) that her home would be scheduled for foreclosure if she did not pay this amount plus the principal balance of her loan.

Unfortunately, this relatively new trend has become widespread. As the Consumer Financial Protection Bureau ("CFPB") has observed:

> Many borrowers, having not received any notices or periodic statements for years, concluded that their second mortgages had been modified along with the first mortgage, discharged in bankruptcy, or forgiven. In recent years, as home prices have increased and borrowers have paid down their first mortgages, after years of silence, some borrowers are hearing from companies that claim to own or have the right to collect on their long-dormant second mortgages. These companies often demand the outstanding balance on the second mortgage, plus fees and interest, and threaten to foreclose if the borrower does not or cannot pay.[1]

---

[1] CFPB, Advisory Opinion re: 12 C.F.R. Part 1006 (2023), https://files.consumerfinance.gov/f/documents/cfpb_regulation-f-time-barreddebtadvisory-opinion_2023-04.pdf; *see also Back from the Dead: Zombie Second Mortgages*, CFPB (Jan. 17, 2025), https://www.consumerfinance.gov/about-us/blog/back-from-the-dead-zombie-second-mortgages/; *CFPB Issues Guidance to Protect Homeowners from Illegal Collection Tactics on Zombie Mortgages*, CFPB (Apr. 26, 2023), https://www.consumerfinance.gov/about-us/newsroom/cfpb-issues-guidance-to-protect-homeowners-from-illegal-collection-tactics-on-zombie-mortgages/.

Shellpoint and its predecessor, Specialized Loan Servicing ("SLS"), are the largest servicers of these so-called "Zombie Second" mortgages. They attempt to collect and collect millions in additional interest and fees for periods in which no statements were sent to borrowers. This conduct has caused considerable harm, robbing each affected consumer of tens of thousands of dollars in home equity, which often represents their most substantial asset, not to mention the justifiable fear of suddenly losing their family homes with no recourse.

Faced with Shellpoint's refusal to correct its unlawful and unfair conduct, Plaintiff brings this case to obtain relief for herself and other similarly situated consumers. Plaintiff specifically seeks to prevent the collection of retroactive interest and fees on second mortgage loans like her own. Defendants move to dismiss Plaintiff's case on the grounds that the claims hinge on the viability of a claim under the Truth in Lending Act ("TILA"), for which Defendants cannot be held liable. But Plaintiff does not allege a TILA claim, nor do her claims hinge on TILA. Rather, Plaintiff alleges violations of the Fair Debt Collection Practices Act ("FDCPA") and Massachusetts state law because Defendants engaged in unfair and/or deceptive practices by systematically and routinely failing to provide periodic billing statements to consumers and then, suddenly, attempting to collect years' worth of purported accrued interest and fees, under threat of foreclosure. The fact that TILA supports (but is not determinative of) Plaintiff's claims does not give Defendants free rein to violate other laws. The Court, therefore, should deny the motion to dismiss in its entirety.

## FACTS

In March 2005, Plaintiff obtained a Home Equity Line of Credit ("HELOC") second mortgage secured by her home in Plymouth, Massachusetts, with an initial principal balance of $100,000. (Am. Compl. ¶¶ 42–43, ECF No. 24.) Around October 2007, Plaintiff began suffering serious financial struggles and could no longer afford to make payments on her HELOC. (*Id.* ¶ 44.)

Eventually Plaintiff was forced to file for Chapter 7 bankruptcy and received a discharge on December 11, 2008. (*Id.* ¶ 45.) Plaintiff retained the home and continues to live there. At the time of the discharge, the balance on Plaintiff's second mortgage was just under $100,000. (*Id.* ¶ 46.) Following her bankruptcy filing, Plaintiff stopped receiving monthly statements. (*Id.* ¶ 47.)

On October 1, 2013, SLS assumed servicing rights to Plaintiff's second mortgage. (*Id.* ¶ 48.) The loan was in default at the time SLS became the servicer, as Plaintiff had not made any payments towards the mortgage since October 2007. (*Id.* ¶ 49.) For more than a decade, Plaintiff heard nothing from SLS regarding her second mortgage. (*Id.* ¶ 50.) She received no monthly statements or other correspondence that claimed she owed any amounts on the loan. (*Id.*) In fact, the first time Plaintiff heard from a servicer about her second mortgage was when she received a Notice of Default and Notice of Intent to Foreclose on January 23, 2024. (*Id.* ¶ 51.) The notice stated that Plaintiff needed to pay $152,820.46 to cure the arrearage on her HELOC or her home would be referred to foreclosure. (*Id.* ¶ 52.) The amount listed included close to $100,000 in interest and fees that had been assessed during the period in which Plaintiff received no monthly statements or other communications about the mortgage indicating that it existed, or that it was accruing any additional amounts. (*Id.* ¶ 53.) At that point, SLS had merged with Shellpoint. (*Id.* ¶ 56.)

Plaintiff wrote to SLS/Shellpoint shortly after receiving the notice, explaining that she had not received any communications about the loan for the past fifteen years and asking Shellpoint to explain how it had been charging her interest without sending her monthly mortgage statements. (*Id.* ¶ 56.) In its response, Shellpoint confirmed that it had not sent Plaintiff any monthly mortgage statements because of her bankruptcy filing but refused to remove any of the interest or fees from her account. (*Id.* ¶ 57.) The response also included a payoff quote, which reflected a total amount

3

due of $200,090.51 on the HELOC, including $100,151.68 in interest. (*Id.* ¶ 58.) In the months following Plaintiff's letter to Shellpoint, Shellpoint resumed sending monthly mortgage statements to Plaintiff for her HELOC. (*Id.* ¶ 59.) Each statement showed a total balance of more than $200,000 due on her HELOC, with a payment of more than $160,000 required to bring the loan current. (*Id.*) SLS/Shellpoint's conduct, undertaken on behalf of BONY, has caused considerable damage to Plaintiff, including interfering with her ability to restart payments after her bankruptcy discharge, making it impossible for her to modify her loan to avoid foreclosure before substantial arrears accrued, lost equity in her home of approximately $100,000, as well as the significant stress that the pending foreclosure caused her. (*Id.* ¶ 60.)

Plaintiff then filed this class action lawsuit alleging claims under the Fair Debt Collection Practices Act, Massachusetts consumer protection law (Chapter 93A) and debt collection regulations, and the Declaratory Judgment Act. (*Id.*)

## LEGAL STANDARD

"On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all well-pled facts, analyze those facts in the light most hospitable to the Plaintiff's theory, and draw all reasonable inferences from those facts in favor of Plaintiff." *Shue v. JMAC Distribution, LLC*, 745 F. Supp. 3d 3, 5 (D. Mass. 2024) (Burroughs, J.) (citing *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 383 (1st Cir. 2011)). "The facts alleged must be sufficient to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013)).

## ARGUMENT

### I.    Plaintiff Plausibly Alleges FDCPA Claims in Counts Two and Six.

"To establish a claim under the FDCPA, a plaintiff must show (1) that she was the object of collection activity arising from consumer debt, (2) that defendants are debt collectors as defined

4

by the FDCPA, and (3) that defendants engaged in an act or omission prohibited by the FDCPA." *Neathery v. Lucky 13 Recovery Inc.*, 2023 WL 7924149, at *2 (D. Mass. Nov. 16, 2023) (Saylor, J.).

Seeking to dismiss Plaintiff's FDCPA claims in Counts Two and Six, Defendants do not challenge the sufficiency of Plaintiff's allegations or argue that Plaintiff cannot satisfy any of the elements needed to state an FDCPA claim. Indeed, taken as true, the Amended Complaint clearly establishes the elements of an FDCPA claim: Plaintiff was subjected to collection activity through Shellpoint's billing statements and threats of foreclosure, and Shellpoint obtained the servicing rights to the debt when it was already in default, such that it qualifies under the FDCPA definition of a debt collector. (*See, e.g.*, Am. Compl. ¶¶ 80, 77.)

Plaintiff also plausibly alleges that Shellpoint engaged in conduct prohibited by the FDCPA. As to Count Two, Plaintiff plausibly alleges that Shellpoint's periodic statements contained false representations about the amount due on the mortgage because the statements included interest and fees that borrowers did not owe because they were assessed for periods in which borrowers were not sent monthly billing statements. (*See, e.g.*, *id.* ¶ 81.) Shellpoint could not have assessed or collected this interest because both Massachusetts and federal law prohibit the collection of fees and interest for periods of time in which billing statements are not provided. *See* Mass. Gen. Laws ch. 140D, §§ 18, 19; 15 U.S.C. § 1637(b); 12 C.F.R. § 1026.7. And as to Count Six, Plaintiff plausibly alleges that Shellpoint violated the FDCPA's prohibition on attempting to foreclose without a present right to possession of the property when it conducted foreclosure activities even though it had never sent an acceleration notice that complied with Plaintiff's mortgage. (Am. Compl. ¶ 112–13.)

> A.    *TILA does not bar the FDCPA violation alleged in Count Two as a matter of law.*

In their lone challenge to Count Two, Defendants contend that they cannot be held liable

under the FDCPA—as a matter of law—because Plaintiff cannot state a TILA claim. But Plaintiff *does not* seek relief from Defendants under TILA, and Plaintiff's purported inability to sue Defendants under TILA cannot be imputed to excuse Defendants' violations of other laws, including the FDCPA.

Contrary to Defendants' position, the obligations arising under one federal statute do not extinguish the obligations arising under another. Instead, "when confronted with two Acts of Congress touching on the same topic, [a court] is not at liberty to pick and choose among congressional enactments and must instead strive give effect to both." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 498 (2018) (cleaned up); *see also Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1559 (11th Cir. 1996) ("'[W]hen interpreting and construing two or more acts that affect one particular subject matter or area, the court must attempt to reconcile the acts, if possible, so as to produce a symmetrical whole.'").

Here, that task is simple because there is no conflict between TILA's language and the FDCPA's language. To be sure, Congress passed TILA and the FDCPA separately to protect consumers from different—albeit sometimes overlapping—conduct. Thus, TILA, enacted in 1968, aims to "assure a meaningful disclosure of credit terms . . . and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). And the FDCPA, enacted almost a decade later in 1977, intends to "eliminate abusive debt collection practices by debt collectors, to ensure those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

Specifically relevant to this case, TILA requires mortgage lenders and servicers to send consumers a statement once per billing cycle, updating them on several items about the outstanding

6

loan amount. *See* 15 U.S.C. § 1637(b); 12 C.F.R. § 1026.5(b)(2). Nothing in TILA says that a periodic statement cannot serve as a means of debt collection. That is critical because the statutes do not irreconcilably conflict in their operation. TILA requires a servicer to send monthly statements, and the FDCPA requires that those statements be accurate when they contain language that would induce a debtor to pay. *See Lamirand v. Fay Servicing, LLC*, 38 F.4th 976, 980 (11th Cir. 2022). The statutes thus reinforce each other, ensuring that consumers receive both regular and accurate information about their mortgage loans. *Id.*

Considering the statutes' independent functions, courts have held that monthly statements that include a demand for payment are actionable under the FDCPA, notwithstanding their relation to TILA. *Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260, 1271 (11th Cir. 2022); *Lamirand*, 38 F.4th at 980; *Lipford v. Specialized Loan Servicing, LLC*, 2024 WL 3760752, at *4 (E.D. Va. Aug. 12, 2024). Similarly, courts in this District have ruled that FDCPA claims can arise from violations of other laws—even if those laws do not provide an independent basis for relief. *See, e.g.*, *Lannan v. Levy & White*, 186 F. Supp. 3d 77, 92–94 (D. Mass. 2016) (holding that debt collector's violation of small claims court rules gave rise to a FDCPA claim for "falsely representing 'the character, amount, or legal status' of [class members'] debts" and rejecting argument that a violation of a state rule cannot give rise to an FDCPA violation).

In any event, Defendants' cases are *not* binding authority in this Court,[2] and each predates

---

[2] In their brief, Defendants claim that "courts nationwide, including the First Circuit, have rejected such attempts to improperly backdoor a TILA claim when a TILA claim does not exist in the first place." (Defs.' Mem. in Supp. Mot. to Dismiss ("Defs.' Br."), ECF No. 27 at 4.) Defendants do not cite any cases from, much less within, the First Circuit that support that statement. In fact, Defendants cite only one unpublished case from this District, which merely held that the plaintiffs in that case failed to plead a claim under TILA against a mortgage servicer. (*Id.* at 5 (citing *Shilo v. Ditech Fin., LLC,* 2017 WL 3202725, *8 (D. Mass. July 26, 2017).) Because Plaintiff does not attempt to establish liability under TILA, this case and the others cited for this proposition by Defendants are irrelevant.

the appellate decisions in *Daniels* and *Lamirand*, which reflect the better reasoned position and the modern trend. Like those appellate courts, this Court should reconcile TILA and the FDCPA and reject Defendants' invitation to neuter enforcement of the FDCPA notwithstanding Defendants' noncompliance with their obligations thereunder.

The Court should also reject Defendants' argument because the cases on which Defendants rely are factually inapposite. Defendants' cases relate to FDCPA claims "entirely predicated" on a failure to send statements. *See, e.g.*, *Lee v. Northland Grp.*, 2003 WL 25765398 at *1 (N.D. Ill. Apr. 24, 2003) ("Lee's FDCPA and ICFA claims are entirely predicated on her nonexistent TILA violation, and thus those claims must also be dismissed."); *Robb v. Cap. Acquisitions & Mgmt. Co.*, 2002 WL 31654941, at *5 (N.D. Ill. Nov. 21, 2002) (dismissing FDCPA claim "entirely predicated on a nonexistent TILA violation"); *Neff v. Cap. Acquisitions & Mgmt. Co.*, 238 F. Supp. 2d 986, 992 (N.D. Ill. 2002) ("Because his FDCPA claim is entirely predicated on a nonexistent TILA violation, Neff's FDCPA claim must be dismissed."), *aff'd*, 352 F.3d 1118 (7th Cir. 2003); *see also Richards v. NewRez LLC*, 2021 WL 1060286, at *28 (D. Md. Mar. 18, 2021) (dismissing claim "based on Shellpoint's alleged failure to send periodic statements").

In other words, those cases support the premise that a plaintiff cannot assert an FDCPA claim predicated on the failure to send periodic statements because the requirement to send periodic statements is governed by TILA. But as noted above, that is decidedly not the basis of Plaintiff's FDCPA claim. Plaintiff's FDCPA claim seeks redress for Defendants' attempts to collect interest and fees that Defendants did not have a legal right to collect. Plaintiff does not assert an FDCPA claim based on Defendants' failures to send statements in a vacuum. That Defendants' (or another entity's) failure to send statements in contravention of TILA *affected* Defendants' legal right to collect interest and fees does not otherwise render the FDCPA superfluous.

B.      *TILA does not bar the individual FDCPA claim alleged in Count Six.*

Defendants also move to dismiss Plaintiff's individual FDCPA claim (Count VI) but without separating out its argument from those purporting to support their motion to dismiss the class claim (Count II). Defendants' argument as to Plaintiff's individual FDCPA claim fails for the same reasons stated above. Put simply, Plaintiff's purported inability to sue Defendants under TILA does not foreclose a separate claim under a separate law that imposes on Defendants separate legal obligations.

But in addition, the Court should not dismiss Plaintiff's individual FDCPA claim because it relates to other debt collection attempts, including Defendants' mailing of pre-foreclosure notices. (*See, e.g.*, Am. Compl. ¶¶ 112–13.) Thus, even if TILA precluded an FDCPA claim predicated on violations made through the issuance of statements, it would have no effect on other, unrelated violations, including those alleged through Count VI.

## II.     Plaintiff Plausibly Alleges a Chapter 93A Claim in Count Three.

Defendants move to dismiss Plaintiff's state law claims (Counts Three and Four) on the same grounds as the FDCPA claim—that they impermissibly hinge on a TILA violation. Notably, in raising this challenge, Defendants do not challenge the sufficient of Plaintiff's pleadings, address the elements of Plaintiff's claims, or cite any authority supporting their position that Plaintiff is somehow barred by TILA from bringing claims under Chapter 93A. Defendants' argument is wrong for several reasons. First, following the logic detailed above, TILA does not bar Plaintiff's Chapter 93A claims. But more importantly, Chapter 93A, prohibits *any* unfair or deceptive practice—especially (but not exclusively) practices that fall within the penumbra of other legal requirements. Because Defendants' conduct of failing to provide billing statements for years and then attempting to collect huge sums of purported retroactive interest and fees under

threat of foreclosure is plausibly unfair or deceptive, regardless of TILA, Plaintiff's claim survives.

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). While a consumer must only show that an act is unfair *or* deceptive to make out a Chapter 93A claim, as set forth below, Plaintiff does both.

A.    *Plaintiff states a plausible Chapter 93A claim for **unfair** acts or practices.*

To plausibly state a Chapter 93A claim for unfair acts or practices, the plaintiff must allege an act or practice that "is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; *or* (3) causes substantial injury to [consumers,] competitors or other business people." *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 79 (1st Cir. 2020) (emphasis added, marks in original) (quoting *Heller Fin. v. Ins. Co. of N. Am.*, 573 N.E.2d 8, 12–13 (Mass. 1991)); *see also Connor v. Marriott Int'l, Inc.*, 231 N.E.3d 375, 382, *review denied*, 494 Mass. 1102, 235 N.E.3d 241 (2024) (denying motion for summary judgment). While Plaintiff need only allege an act or practice that satisfies one of these factors, Defendants' conduct more than plausibly meets all three. *See, e.g.*, *H1 Lincoln, Inc. v. S. Washington St., LLC,* 179 N.E.3d 545, 559 (2022) (affirming finding of unfairness based on solely the first factor).

i.    Plaintiff plausibly alleged that Defendants' conduct is within the penumbra of established concepts of unfairness.

Chapter 93A "does not define unfairness, recognizing that '[t]here is no limit to human inventiveness in this field.'" *Commonwealth v. Fremont Inv. & Loan*, 897 N.E.2d 548, 556 (Mass. 2008) (quoting *Levings v. Forbes & Wallace, Inc.*, 396 N.E.2d 149, 153 (Mass. App. Ct. 1979)). Instead, "[w]hat is significant is the particular circumstances and context in which the term is applied." *Id.* at 743 (citing *Kerlinsky v. Fidelity & Deposit Co.*, 690 F. Supp. 1112, 1119 (D. Mass.

1987), *aff'd*, 843 F.2d 1383 (1st Cir. 1988)). The "legality of the challenged act or practice" is also "not dispositive of its unfairness." *Tomasella*, 962 F.3d at 79 (citing *Mechs. Nat'l Bank of Worcester v. Killeen*, 384 N.E.2d 1231, 1237 (Mass. 1979)). Indeed, for a "practice to fall within the penumbra of a statute's concept of unfairness, it need not actually violate the statute." *Cooper v. Charter Communs. Entm'ts I, LLC*, 760 F.3d 103, 111 (1st Cir. 2014); *see also Kattar v. Demoulas*, 739 N.E.2d 246, 257 (Mass. 2000) (Chapter 93A makes "conduct unlawful which was not unlawful under the common law or any prior statute.").

Plaintiff's claims fall squarely within this definition, as applied by Massachusetts courts. In *Horvath v. Adelson, Golden & Loria, P.C.*, the court held that closing attorneys' failure to provide a Notice of Right to Cancel for a loan as required by the federal and state TILAs fell within the penumbra of the federal and state TILAs' concepts of unfairness, to the extent the borrowers suffered injury as a result.[3] No. 97-00266-F, 2000 WL 33159239, at *6 (Mass. Super. June 16, 2000) (citing 15 U.S.C. § 1601 *et seq.*, M.G.L. c. 140D), *aff'd*, 773 N.E.2d 478 (Mass. App. Ct. 2002). Though the closing attorneys did not violate "the letter of these statutes" because they were technically not "creditors," they still violated "the spirit of these statutes" by failing to provide proper notice. *Id.* As such, their failure to disclose could "fall within the penumbra of the unfairness intended to be remedied by the Truth-in-Lending Acts" and thus "constitute an unfair and

---

[3] In *Horvath*, the Chapter 93A claim did not survive only because "the alleged misconduct was without legal consequence" as there was "no evidence" of "a causal connection between the misconduct committed between the misconduct committed by the defendant and the harm suffered by the plaintiff." 2000 WL 33159239, at *7. The appellate court affirmed largely on this basis in an unpublished opinion. 773 N.E.2d 478. However, here, Plaintiff alleges that she suffered injury as the proximate result of Defendants' conduct, including lost equity in her home, lost opportunity to seek to modify the loan or seek alternative relief before arrears accrued, and the threat of foreclosure. (*See* Am. Compl. ¶¶ 24, 41, 60, 88.) This is more than sufficient to satisfy the requirements of Chapter 93A. *See, e.g.*, *Hershenow v. Enter. Rent-A-Car Co. Of Bos., Inc*., 840 N.E.2d 526, 535 (Mass. 2006).

deceptive act or practice even if not formally a violation of the Massachusetts or federal Truth-in-Lending Acts." *See id.* Similarly, courts have held that a mortgage servicer's failure to comply with federal requirements to modify home loans can give rise to a Chapter 93A violation, even though those requirements were not privately enforceable, when the homeowner appropriately pleaded that the actions were unfair or deceptive, not just a technical violation. *See, e.g.*, *Okoye v. Bank of New York Mellon*, No. CIV.A. 10-11563-DPW, 2011 WL 3269686, at *6-*10 (D. Mass. July 28, 2011).

Likewise, here, Defendants' assessment of interest and fees during a period in which it failed to provide mortgage statements—and their attempt to collect them under threat of foreclosure—clearly falls within the penumbra of the Massachusetts and federal TILA's concept of unfairness as well as generally established concepts of unfairness. Both the federal and Massachusetts TILA requires that a creditor furnishes a consumer with a periodic statement that discloses the account balance outstanding at the beginning and closing of each billing cycle and prohibit the assessment of interest and fees for periods in which statements are not provided. *See* 12 C.F.R. § 1026.7; 15 U.S.C. § 1637(6); Mass. Gen. Laws ch. 140D, §§ 18, 19. Though Defendants purportedly did not violate the letter of TILA because they, too, are technically not "creditors," they still violated the spirit of TILA by assessing fees and interest while not providing billing statements. Moreover, this conduct directly and meaningfully harms consumers like Plaintiff, including by interfering with their ability to make or catch up their payments, stripping the equity from their homes, and subjecting them to threats of foreclosure. As such, their conduct falls within the penumbra of the unfairness intended to be remedied by TILA and thus constitutes an unfair practice even if not formally a violation of TILA.

        ii.    Plaintiff plausibly alleged that Defendants' conduct is immoral, unethical, oppressive, and unscrupulous.

Whether "an act or practice is 'immoral, unethical, oppressive or unscrupulous' is the kind of fact-specific determination generally left for a jury." *Primarque Prods. Co. v. Williams W. & Witts Prods. Co.*, 988 F.3d 26, 45 (1st Cir. 2021). As such, Plaintiff need only allege "sufficient evidence"—which is at least "a scintilla"—to "create a jury question on the issue of whether [Defendants'] conduct was 'unfair' within the meaning of Chapter 93A." *Id.* at 46. Here, Defendants' conduct violates several ethical principles.

Defendants' attempting to collect substantial retroactive interest and fees under threat of foreclosure for periods in which Plaintiff was not provided mortgage statements violates a central principle of equity guiding Chapter 93A. "One of the important means by which Chapter 93A seeks to achieve 'a more equitable balance in the relationship of consumers to persons conducting business activities' is by promoting 'proper disclosure of information.'" *O'Keeffe v. Superior Carpet*, 1987 Mass. App. Div. 108, 110 (1987) (quoting *Lowell Gas Co. v. Attorney General*, 385 N.E.2d 240, 249 (Mass. 1979)). "Thus, for example, the failure of a person in business to provide material information may be a violation of Chapter 93A even if it would not constitute a wrong under common law principles." *Id.* (footnote omitted) (citing *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975)). Here, Defendants failed to properly disclose to Plaintiff material information, namely "the balance of her loan, including interest that was supposedly still accruing after discharge and charge-off of the loan." (Am. Compl. ¶ 11.)

Defendants' subsequent attempt to collect while threatening foreclosure also violates basic principles of contract because when they decided not to send periodic billing statements, they waived the right to assess interest or fees. *See e.g.*, *Brooks v. Cama Self Directed IRA, LLC*, 2019 WL 418412, at *9 (D. Md. Jan. 31, 2019) (finding waiver of interest due under a home equity line of credit after a servicer failed to send monthly mortgage statements based on state contract law);

13

*see also Commonwealth v. Lavoie*, 981 N.E.2d 192, 197 n.8 (Mass. 2013). In short, Plaintiff plausibly alleges that Defendants' practices were immoral, unethical, oppressive, and/or unscrupulous.

> iii.   Plaintiff plausibly alleges that Defendants' conduct causes substantial injury to consumers.

Here, Plaintiff and class members suffered substantial injury because of Defendants' conduct, including the assessment of retroactive interest and fees they had no ability to prevent from accumulating, emotional distress, lost equity in their homes, and actual damages if they paid the improper interest and fees. (Am. Compl. ¶¶ 88–89.) Consumers as a whole are also similarly and substantially injured. *See Killeen*, 384 N.E.2d at 1237 ("[U]nfairness is to be measured not simply by determining whether particular conduct is lawful . . . but also by analyzing the effect of the conduct on the public (or the consumer)."). Shellpoint/SLS and BONY service and hold a huge number of second mortgages and subject consumers to this same conduct. Allowing this conduct to go undeterred—including through foreclosure—destabilizes the housing market and property values not just for the directly impacted consumers, but also their neighbors and communities, and Defendants' own business competitors. This conduct is sufficiently widespread and problematic that the federal government has taken notice and action. (*See* Am. Compl. at ¶¶ 16, 17.)

> B.  *Plaintiff states a plausible Chapter 93A claim for **deceptive** acts or practices.*

To plausibly state a Chapter 93A claim for deceptive acts or practices, the plaintiff must allege "(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury." *Tomasella*, 962 F.3d at 71 (quoting *Casavant v. Norwegian Cruise Line, Ltd.*, 919 N.E.2d 165, 168-69 (Mass. App. Ct. 2009)). Here, Plaintiff alleges all three.

An act or practice is deceptive for the purposes of Chapter 93A if it "has the capacity to

mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." *Tomasella*, 962 F.3d at 71 (quoting *Aspinall v. Philip Morris Companies, Inc.*, 813 N.E.2d 476, 488 (Mass. 2004)). Defendants' failure to provide mortgage statements to Plaintiff and the class members misled them to act differently—yet reasonably— than they otherwise would have. If Plaintiff and the class members had continued to receive monthly statements after their bankruptcies, they would not have reasonably concluded that their mortgages were discharged and payments no longer necessary. (*See* Am. Compl. ¶ 17.) Instead, Plaintiff would have "restart[ed] payments after her bankruptcy discharge" or "modif[ied] her loan to avoid foreclosure before substantial arrears accrued." (*Id.* ¶ 60.) The class members were similarly deprived of their "ability to make payments, organize their budgets for regular payments, and catch up when they fall behind." (*Id.* ¶ 39.)

Deceptive acts also include "certain kinds of nondisclosures" or omissions. *Tomasella*, 962 F.3d at 71. An omission is a "failure to 'disclose to another a fact that [one] knows may justifiably induce the other to act or refrain from acting in a business transaction . . . [if one] is under a duty to the other to exercise reasonable care to disclose the matter in question." *Id.* at 71–72 (alteration in original) (quoting *Underwood v. Risman*, 605 N.E.2d 832, 836 (Mass. 1993)). Defendants' failure to provide mortgage statements was an omission. Defendants failed to disclose to Plaintiff and the class members mortgage statements that "would have periodically apprised [them] of the balance of [their] loan, including interest that was supposedly still accruing after discharge and charge-off of the loan." (Am. Compl. 24 ¶ 11.) Defendants also knew or should have known that their failure to provide mortgage statements might justifiably induce Plaintiff and the class members to refrain from making any payments. (*See id.* ¶ 39.)

In construing the definitions of "unfair" and "deceptive" under Chapter 93, Massachusetts

courts are guided by the Federal Trade Commission's ("FTC") interpretations to section 5(a)(1) of the Federal Trade Commission Act. According to the FTC, an omission can constitute a deceptive act if a party "simply remain[s] silent, if [the party] does so under circumstances that constitute an implied but false representation . . . ." *Tomasella*, 962 F.3d at 72 (quoting *In re International Harvester Co.*, 104 F.T.C. 949, 1057–58 (1984)); *see also In re Lenovo, Inc.,* 2017 FTC LEXIS 172, at *2 ("[a] seller's silence may make an implied representation").

Defendants' omission of failing to provide periodic statements is deceptive for the purposes of Chapter 93A. Plaintiff "stopped receiving monthly mortgage statements for her second mortgage" at the same time she "received a bankruptcy discharge of her second mortgage." (Am. Compl. ¶ 8.) The fact that Defendants' omission—the stoppage of monthly statements—was simultaneous with Plaintiff's discharge gives a particular meaning to that omission: that the second mortgage had been resolved. (*See id.* ¶ 17 (the CFPB identified this implied representation as the conclusion of "[m]any borrowers.").)

Finally, Plaintiff plausibly alleges that Defendants' deceptive acts proximately injured Plaintiff and class members including the assessment of retroactive interest and fees they had no ability to prevent from accumulating, emotional distress, lost equity in their homes, and actual damages if the improper interest and fees were paid. (Am. Compl. ¶¶ 88–89.) These allegations clearly satisfy the injury requirements of Chapter 93A. *See, e.g., Nightingale v. Nat'l Grid USA Serv. Co., Inc,* 107 F.4th 1, 9 (1st Cir. 2024); *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 17 N.E.3d 1066, 1077 & n.12 (Mass. 2014); *Tyler v. Michaels Stores, Inc*., 984 N.E.2d 737, 746 (Mass. 2013); *Hershenow v. Enter. Rent-A-Car Co. Of Bos., Inc*., 840 N.E.2d 526, 535 (Mass. 2006); *Leardi v. Brown*, 474 N.E.2d 1094, 1100-01 (Mass. 1985).

### III.     Plaintiff Plausibly Alleges a Claim for Violations of the Massachusetts Debt Collection Regulations in Count Four.

As set forth above, Defendants' motion to dismiss Plaintiff's Count Four does not challenge the actual sufficiency of the Amended Complaint, does not address the elements of the claims, and does not cite any authority supporting its position. Because Defendants' conduct of failing to provide billing statements for years and then attempting to collect huge sums of purported retroactive interest and fees under threat of foreclosure is plausibly violates Massachusetts Debt Collection Regulations ("MDCR"), Plaintiff's claim survives.

The MDCR establishes standards for the servicing of loans and collection of debts from consumers in Massachusetts. 209 CMR 18.01. Plaintiff alleges that Defendants violated the MDCR, including, without limitation, 209 CMR 18.01, .19, .23, and .24. (Am. Compl. ¶ 104.) Chapter 93A creates the private right of action to enforce these regulations. *See Cranmore v. Wells Fargo Bank, N.A.*, 410 F. Supp. 3d 336, 341 (D. Mass. 2019) (violations of the MDCR are *per se* violations of Chapter 93A).

Here, specifically, Plaintiff alleges that Defendants used false, deceptive, or misleading representations or means to collect, including by misrepresenting the character and amounts of the debt; and used unfair or unconscionable means to collect, including by generally violating principals of fairness, by collecting amounts that are not permissible by law, misrepresenting material information about the loans. 209 CMR 18.01, .19, .23, and .24. Specifically, as described above, Defendants' practices constitute deceptive and unfair conduct under Massachusetts law. *See supra* Section II. This logically extends to Defendants' same practices being unfair or deceptive debt collection or servicing conduct, since they occurred in the course of collecting on the loans. *In addition*, as described throughout, both state and federal law prohibit the collection of fees and interest for periods of time in which billing statements are not provided. *See* Mass. Gen. Laws ch. 140D, §§ 18, 19; 15 U.S.C. § 1637(b); 12 C.F.R. § 1026.7. The collection or

attempts to collect these amounts are thus prohibited by law, and any statements that these amounts are due and owing are misrepresentations both as to the character and amount of the debts, all in violation of the MDCR. Finally, beginning the foreclosure process based on these illegal amounts constitutes "[k]nowingly or recklessly facilitating the illegal foreclosure of real property collateral," in violation of 209 CMR 18.24(1)(d).

Because Plaintiff plausibly alleged that Defendants misrepresented amounts due and otherwise engaged in unfair and unconscionable conduct, the claim survives—regardless of whether the misrepresentation is based on Defendants' collection of amounts that are not authorized under another law or whether or not another cause of action might exist under a different state or federal law. *See, e.g.*, *Lannan v. Levy & White*, 186 F. Supp. 3d 77, 92–96 (D. Mass. 2016). Indeed, Defendants' argument that Plaintiff cannot bring a claim predicated on collection of amounts that are not authorized by TILA or the Massachusetts equivalent contradicts the very language of the debt collection regulations, which prohibit collection of amounts that are not "expressly . . . permitted by law." 209 CMR 18.19(1). Defendants' argument must be rejected.

## IV. Plaintiff Plausibly Alleges an Actual Controversy and a Declaratory Judgment Claim.

Count One of Plaintiff's Amended Complaint seeks a declaratory judgment against Defendants that all interest and fees assessed to discharged HELOCs during any time in which Shellpoint or its predecessors-in-interest failed to provide statements are waived and/or unenforceable. (Am. Compl. ¶ 75.) Defendants contend that Plaintiff's declaratory judgment claim should fail, because there is no cognizable claim for a violation of TILA or the Massachusetts equivalent, and, therefore, no "actual controversy." (Defs.' Br. at 9–10.) Defendants' argument fails because Plaintiff asserts an actual, justiciable controversy appropriate for declaratory judgment, because Plaintiff and members of the class are experiencing ongoing harm from Defendants'

continued attempt to collect interest and fees accrued during the period in which they failed to send monthly statements, which Plaintiff alleges are waived and/or unenforceable, including because such interest and fees are waived. This waiver theory is based on state contract waiver principles. *See, e.g.*, *Brooks v. Cama Self Directed IRA, LLC*, 2019 WL 418412, at *9 (D. Md. Jan. 31, 2019) (finding waiver of interest due under a home equity line of credit after a servicer failed to send monthly mortgage statements based on state contract law); *see also Lavoie*, 981 N.E.2d at 197 n.8 (Mass. 2013) ("A waiver of a right involves the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right." (internal quotations omitted)). Because Defendants contend that the interest is contractually owed, and Plaintiff disagrees, there is an actual controversy between the parties.

Pursuant to the Declaratory Judgment Act, federal courts have discretionary power to issue declaratory judgments only in cases of actual controversy as interpreted under Article III. *Icarom, PLC, v. Howard Cnty, Md.*, 904 F. Supp. 454, 457 (D. Md. 1995); *see* U.S.C. § 2201(a). An actual justiciable controversy arises when "the facts alleged, under all circumstances, show that there is a substantial controversy, between parties, having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Icarom,* 904 F. Supp. at 457 (quoting *Maryland Cas. Co. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Here, Plaintiff plausibly alleges a real and immediate controversy. There is no dispute that SLS/Shellpoint, on behalf of BONY, knowingly prevented Plaintiff and the class members from receiving periodic billing statements that would have apprised them of the balances of their loans. The dispute concerns whether BONY and SLS/Shellpoint, on behalf of BONY, have waived the right to collect the fees and interests assessed to Plaintiff's loan during the period during which statements were not sent. Plaintiff maintains that they have.

19

Defendants are now attempting to collect interest and fees that they claim accrued during the period in which Defendants failed to fulfill their obligations to Plaintiff and the class members. Absent a declaratory judgment that the interest and fees are waived and/or unenforceable, Plaintiff and the other class members face ongoing harm, including the accumulation of additional debt, adverse credit reporting of the invalid loans, and abusive collection practices. Of paramount concern to Plaintiff and the other class members is the threat of imminent foreclosure on their homes unless they pay off the interest and fees imposed by Defendants—approximately $100,000 in the case of Plaintiff. A resolution by this Court will determine the rights and interests of the parties to the loan contracts as well as the validity, if any, of the disputed interests and fees. Therefore, Plaintiff plausibly alleges a claim for declaratory judgment as appropriate and necessary relief to resolve the real and ongoing harm faced by Defendants' borrowers.

### V.     No Basis Exists to Strike Plaintiff's Class Claims.

Defendants argue that Plaintiff's class claims should be dismissed because Plaintiff has no viable claim and thus cannot represent the classes asserted. (Defs.' Br. at 11.) Because Plaintiff's class claims survive for the reasons stated above, no basis exists to strike any class allegations or claims. Separately, the Court should reject Defendants' invitation to strike class claims as premature. *See Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 318 (D. Mass. 2020) ("Pre-discovery motions to strike are . . . disfavored and courts should, 'exercise caution when striking class action allegations based solely on the pleadings.' . . . [C]ourts 'should typically await the development of a factual record.'" (citations omitted)).

### <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss.

[Signatures on following page]

20

Respectfully submitted,

**EVA HODGES,**
On behalf of herself and all others similarly situated,

By: /s/ Jennifer S. Wagner
Jennifer Wagner (BBO #716264)
Shennan Kavanagh (BBO #655174)
National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, MA 02110
Telephone: (617) 542-8010
skavanagh@nclc.org
jwagner@nclc.org

Kristi C. Kelly (admitted *pro hac vice*)
Casey Nash (admitted *pro hac vice*)
KELLY GUZZO, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA  22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2025, a true copy of the above document, filed through the ECF system, will be served electronically through the ECF system on the registered participants as identified on the Notice of Electronic Filing.

*/s/ Jennifer S. Wagner*
Jennifer Wagner (BBO #716264)