UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EVA HODGES, on behalf of herself and all others similarly situated, | * * * * |
| Plaintiff, | * * |
| v. | * Civil Action No. 25-cv-10147-ADB * * |
| NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING, and THE BANK OF NEW YORK MELLON, | * * * * |
| Defendants. | * * * |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

      Plaintiff Eva Hodges, on behalf of herself and all others similarly situated, brings claims against Newrez, LLC d/b/a Shellpoint Mortgage Servicing[1] ("Shellpoint") and the Bank of New York Mellon ("BNYM") (together, "Defendants") for violations of the Fair Debt Collection Practice Act (the "FDCPA"), the Massachusetts Consumer Protection Act, and Massachusetts Debt Collection Regulations. Plaintiff also seeks declaratory relief. Currently pending is Defendants' motion to dismiss Plaintiff's amended class action complaint. [ECF No. 26]. For the reasons stated herein, Defendants' motion to dismiss is **GRANTED** and Plaintiff's amended complaint is **DISMISSED** without prejudice.

---

[1] Specialized Loan Servicing, LLC ("SLS") is Shellpoint's predecessor in interest. [ECF No. 24 ¶ 1]. SLS and Shellpoint will be referred to interchangeably herein.

# I.    BACKGROUND

## A.    Factual Background

In March 2005, Ms. Hodges obtained a home equity line of credit ("HELOC") second mortgage from Countrywide Home Loans.  [ECF No. 24 ("Amended Complaint" or "Am. Compl.") ¶¶ 4, 42].  The HELOC was secured by her home in Plymouth, Massachusetts.  [Id. ¶ 42].  Ms. Hodges had an initial principal balance of $100,000 on her HELOC.  [Id. ¶ 43].  She made payments on the HELOC until October 2007, when she began suffering financial difficulties, [id. ¶ 44], eventually filing for Chapter 7 bankruptcy and receiving a discharge on December 11, 2008, [id. ¶ 45].  At the time of the discharge, the balance on the HELOC was approximately $100,000 [id. ¶ 46].  The bankruptcy discharge eliminated Ms. Hodges' personal liability for the HELOC, but a lien remained on her home, and the home remained subject to foreclosure if she did not continue making payments on the HELOC.  [Id. ¶ 2].  After the bankruptcy discharge, Ms. Hodges stopped receiving monthly statements for her HELOC.  [Id. ¶ 47].

Shellpoint assumed the servicing rights to Ms. Hodges' HELOC on October 1, 2013. [Am. Compl. ¶ 48].  By that time, Ms. Hodges had not made any payments on the loan since October 2007.  [Id. ¶ 49].  Further, she received no monthly statements or other correspondence from Shellpoint or any other entity showing that she owed any amount on her HELOC from the time of her bankruptcy discharge in December 2008 until January 2024.  [Id. ¶¶ 47, 50].

On January 23, 2024, Ms. Hodges received a Notice of Default and Notice of Intent to Foreclose (the "Acceleration Letter") from Shellpoint stating that she would need to pay $152,820.46, including approximately $100,000 in interest and fees assessed since December 2008, to cure the arrearage on the HELOC and avoid foreclosure.  [Am. Compl. ¶¶ 45, 47, 51–

53]. The Acceleration Letter stated that Shellpoint "retained the right to enforce the lien against the collateral property" if Ms. Hodges did not pay the required amount. [Id. ¶ 54]. Ms. Hodges contacted Shellpoint regarding the outstanding balance, and Shellpoint confirmed that it had not sent her any monthly statements due to her bankruptcy filing. [Id. ¶¶ 56–57]. Shellpoint provided Ms. Hodges with a payoff quote reflecting $100,151.68 in interest and a total due of $200,090.51 on her HELOC, [id. ¶ 58], and began sending monthly HELOC statements to Hodges reflecting the more than $200,000 due on the loan, [id. ¶ 59].

BNYM is the assignee and current holder of Ms. Hodges' HELOC. [ECF No. 27 at 6].

### B.    Procedural History

On January 21, 2025, Plaintiff filed her first complaint. [ECF No. 1]. On March 31, 2025, Defendants moved to dismiss Plaintiff's first complaint, [ECF No. 8], and on April 28, 2025, Plaintiff filed her first amended complaint, [Am. Compl.]. Defendants moved to dismiss Plaintiff's Amended Complaint on May 20, 2025. [ECF No. 26]. Plaintiff opposed the motion on June 27, 2025, [ECF No. 31], and on July 11, 2025, Defendants replied to Plaintiff's response, [ECF No. 32].

## II.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all well-pleaded facts in the complaint, analyzes those facts "in the light most hospitable to the plaintiff's theory, and draw[s] all reasonable inferences for the plaintiff." United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). Although detailed factual allegations are not required, the complaint must set forth "more than labels and conclusions" to survive a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Furthermore, courts are not bound to accept legal

conclusions couched as factual allegations as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Taken together, the alleged facts must be sufficient to "state a claim to relief that is plausible on

its face," A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting

Twombly, 550 U.S. at 570), and must "raise a right to relief above the speculative level,"

Twombly, 550 U.S. at 555.  "A determination of plausibility is 'a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense.'"  Grajales v.

P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012) (quoting Iqbal, 556 U.S. at 679).  Dismissal for

failure to state a claim is thus appropriate "[i]f the complaint does not set forth 'factual

allegations, either direct or inferential, respecting each material element necessary to sustain

recovery under some actionable legal theory.'"  Lemelson v. U.S. Bank Nat'l Ass'n, 721 F.3d

18, 21 (1st Cir. 2013) (quoting Hutcheson, 647 F.3d at 384).

When evaluating the sufficiency of a complaint, the Court "must separate the complaint's

factual allegations (which must be accepted as true) from its conclusory legal allegations (which

need not be credited)."  A.G. ex rel. Maddox, 732 F.3d at 80 (quoting Moralez-Cruz v. Univ. of

P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  The Court must then determine whether the remaining

factual content allows a "reasonable inference that the defendant is liable for the misconduct

alleged."  Id. (quoting Morales-Cruz, 676 F.3d at 224).

## III.    DISCUSSION

### A.    Background: The Truth in Lending Act

Although Plaintiff's first complaint included a claim against BNYM for violating the

Truth in Lending Act (the "TILA"), [ECF No. 1 ¶¶ 76–83], in her Amended Complaint, Plaintiff

abandons the TILA cause of action, and instead brings two claims against Shellpoint for

violating the FDCPA.  [Am. Compl. ¶¶ 76–84; 111–115].  Despite Plaintiff no longer bringing a

direct cause of action under the TILA, a TILA violation must underlie her FDCPA claims.  See [ECF No. 31 at 3].

Section 1637(b) of the TILA requires that "[t]he <u>creditor</u> of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items . . ."  15 U.S.C. § 1637(b) (emphasis added).  Regulation Z, TILA's implementing regulation, and the Massachusetts Consumer Credit Cost Disclosure Act contain similar provisions requiring that a <u>creditor</u> send periodic billing statements to a borrower.  <u>See</u> 12 C.F.R. § 1026.7; Mass. Gen. Laws ch. 140D, § 11(b).  The TILA defines a creditor as "a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness . . ."  15 U.S.C. § 1602(g).  Regulation Z and the Massachusetts Consumer Credit Cost Disclosure Act define "creditor" similarly.  <u>See</u> 12 C.F.R. § 1026.2(a)(17); Mass. Gen. Laws ch. 140D, § 1.  In limited circumstances, assignees of creditors can also be held liable under the TILA, but only in connection with disclosure documents provided before the extension of credit.  <u>Faiella v. Green Tree Servicing LLC</u>, No. 16-cv-00088, 2017 WL 589096, at *3 (D.N.H. Feb. 14, 2017) (citing <u>Evanto v. Fed. Nat. Mortg. Ass'n</u>, 814 F.3d 1295, 1298 (11th Cir. 2016)).

### B.    The FDCPA Claims (Counts II, VI)

Plaintiff, on behalf of herself and all others similarly situated, alleges that Shellpoint violated § 1692e(10) of the FDCPA when it misrepresented that she owed interest and fees that accrued on her HELOC during periods in which she did not receive statements.  [Am. Compl. ¶¶

5

76–84].  Plaintiff also brings an individual claim against Shellpoint for violating § 1692f(6) of the FDCPA, arguing that the interest and fees charged on her HELOC during periods when she did not receive statements were unlawful, meaning that Shellpoint lacked a right to possess her property and therefore has no right to foreclose.  [Am. Compl. ¶¶ 111–115].  Defendants respond that because these FDCPA claims are based solely on Shellpoint's purported violation of the TILA, and because they cannot be held liable under the TILA, the claims must fail as a matter of law.  [ECF No. 27 at 9].

The FDCPA was enacted to protect consumers from abusive debt collection practices, 15 U.S.C. § 1692(e), and "[t]he statute creates a private cause of action against 'any debt collector,'" Dean v. Compass Receivables Mgmt. Corp., 148 F. Supp. 2d 116, 118 (D. Mass. 2001) (quoting 15 U.S.C. § 1692k).  A viable claim for a violation of the FDCPA requires that "(1) [the plaintiff] was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA."  O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 30 (D. Mass. 2014) (internal quotation marks omitted) (quoting Som v. Daniels Law Offices, 573 F. Supp. 2d 349, 356 (D. Mass. 2008).

Here, the parties seemingly agree that the first two prongs are satisfied in that the Acceleration Letter constituted collection activity arising from consumer debt, and Shellpoint is a "debt collector" as defined by the FDCPA.  [Am. Compl. ¶¶ 77, 80]; see [ECF No. 26 at 12–13].  As to the third prong, Plaintiff alleges, and Defendants contest, that Shellpoint violated § 1692e(10) of the FDCPA when it sent her the Acceleration Letter and subsequent statements with interest and fees incurred from December 2008 until January 2024.  [Am. Compl. ¶¶ 79, 81]; [ECF No. 26 at 12–13].  Plaintiff's theory of liability is two-part.  First, she claims that she

does not owe interest and fees that accrued on her loan from December 2008 until January 2024 because no one sent her periodic statements during that period, and second, she claims that Defendants made false statements when they sent the Acceleration Letter and subsequent communications stating that Plaintiff owed these interest and fee amounts.  See generally [Am. Compl.].

### 1.    Periodic Statements Requirement

Plaintiff asserts that the TILA, Regulation Z, and the Massachusetts Consumer Credit Cost Disclosure Act each require that monthly statements be sent to borrowers, and that if a borrower does not receive a statement in a certain period, they cannot be assessed interest or fees for that period.  [Am. Compl. ¶¶ 15, 16 (citing 15 U.S.C. § 1637(b); 12 C.F.R. § 1026.5(b)(2); Mass. Gen. Laws ch. 140D, § 11(b); Mass. Gen. Laws Ann. ch. 140D, § 19(a))]; [ECF No. 31 at 6].  Plaintiff does not, however, dispute that servicers who do not also own the loan, such as Shellpoint, are not creditors as defined by the TILA, and therefore, they cannot be held liable under the TILA.  Shilo v. Ditech Fin. LLC, No. 16-cv-11564, 2017 WL 3202725, at *8 (D. Mass. July 26, 2017), aff'd, No. 17-cv-01884, 2018 WL 11442317 (1st Cir. May 22, 2018). Plaintiff also does not allege that BNYM, as the assignee of Plaintiff's loan, was required under the TILA to send Plaintiff periodic statements regarding her loan, and it is not clear whether she can.  See Faiella, 2017 WL 589096, at *3; Shilo, 2017 WL 3202725, at *6.  Nevertheless, Plaintiff contends that because she did not receive periodic statements for her HELOC between December 2008 and January 2024, Defendants, or another entity, must have failed to comply with the TILA, and due to that violation, no interest or fees could accrue on her HELOC from December 2008 to January 2024.  [ECF No. 31 at 9].

## 2.    False Representations Under the FDCPA

Unlike the TILA, the FDCPA contains no provision requiring debt collectors to send monthly statements to borrowers.  Neff v. Cap. Acquisitions & Mgmt. Co., 238 F. Supp. 2d 986, 993 (N.D. Ill. 2002).  Section 1692e of the FDCPA does, however, prohibit a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and specifies that certain types of conduct are a violation of this section, including "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e.

Plaintiff argues that because she did not receive periodic statements for her HELOC loan between December 2008 and January 2024, as she purports is required by TILA, Defendants no longer have the right to collect the interest and fees that accrued on her loan during that time. [ECF No. 31 at 9].  Therefore, the debt calculation included on the Acceleration Letter and subsequent periodic statements was a misrepresentation.  [Id.].

Multiple courts have rejected attempts to hold non-creditors, and Shellpoint specifically, liable under the FDCPA for attempts to collect interest or other fees that accrued on mortgage loans during periods where no statements were sent to the borrower.  See generally Linderman v. NewRez LLC, No. 25-cv-04271, 2025 WL 3037795 (N.D. Ill. Oct. 31, 2025); Cole v. NewRez LLC, No. 25-cv-04265 (N.D. Ill. Dec. 17, 2025).  Both Linderman and Cole involve borrowers who obtained HELOCs in the late 2000s before filing for Chapter 7 bankruptcy and receiving a discharge of their personal liability for their HELOC.  Linderman, 2025 WL 3037795, at *1; Cole, slip op. at 1.  Following bankruptcy, they received no periodic statements regarding their HELOCs for many years.  Linderman, 2025 WL 3037795, at *1; Cole, slip op. at 1.  Shellpoint then began sending statements and attempting to collect on the loans, including interest that had

8

accrued during periods where no statements were sent. Linderman, 2025 WL 3037795, at *1; Cole, slip op. at 1. In both cases, the courts found that Shellpoint had not violated § 1637(b) by sending Plaintiffs statements or other communications in an effort to collect the accrued interest and fees. Linderman, 2025 WL 3037795, at *4; Cole, slip op. at 4. Similarly, the plaintiff in Richards v. NewRez LLC could not assert an FDCPA claim based on Shellpoint's attempts to collect fees incurred on her mortgage loan during periods where the debt collector had not sent statements. Richards v. NewRez LLC, No. ELH-20-1282, 2021 WL 1060286, at *26–28 (D. Md. Mar. 18, 2021).

More generally, "courts have consistently ruled that the FDCPA 'is not properly used as an enforcement mechanism for the TILA,' especially where the plaintiffs could not succeed on a TILA claim, independently." Richards, 2021 WL 1060286, at *28 (quoting Large v. LVNV Funding, LLC, No. 09-cv-00689, 2010 WL 3069409, at *4–5 (W.D. Mich. Aug. 2, 2010)); see also Lee v. Northland Grp., No. 02-cv-06083, 2003 WL 25765398, at *1 (N.D. Ill. Apr. 24, 2003) ("[Plaintiff]'s FDCPA . . . claims are entirely predicated on her nonexistent TILA violation, and thus those claims must also be dismissed"); Kellar v. Fin. Recovery Servs., Inc., No. 12-cv-00097, 2014 WL 129239, at *5 (D.N.D. Jan. 9, 2014) (holding that where defendant was not subject to TILA requirements, defendant's "failure to disclose TILA information . . . did not constitute a false, deceptive or misleading representation and was therefore not a violation of [the] FDCPA").

Plaintiff characterizes the Defendants' position as an attempt to extinguish obligations arising under one federal statute based on requirements imposed by another federal statute, and argues that the Court must reconcile the TILA and the FDCPA and give effect to both. [ECF No. 31 at 7]. The concept that the Court should give effect to requirements of both the TILA and the

FDCPA when possible does not, however, enable Plaintiff to use the FDCPA to enforce a nonexistent TILA obligation.  See Peters v. Fin. Recovery Servs., Inc., 46 F. Supp. 3d 915, 917–18 (W.D. Mo. 2014) (finding that debt collector who was not subject to TILA could charge post-charge-off interest even if creditors were prohibited from doing so under the TILA).  Plaintiff has not identified a creditor or other entity who violated § 1637(b) and may not remedy this issue by improperly using the FDCPA to enforce the alleged TILA violation against Defendants.

"Imposing the TILA's requirements on debt collectors via the FDCPA would contravene Congress's decision to cabin the reach of the TILA to creditors and their assignees alone." Linderman, 2025 WL 3037795, at *4; see also id. ("'[T]he FDCPA does not place an affirmative obligation on a debt collector to . . . send monthly statements,' so its failure to do so is not unfair, deceptive, or misleading under the FDCPA." (quoting Neff, 238 F. Supp. 2d at 993)).  Plaintiff does not identify any specific entity that was required to send her periodic statements such that its failure to do so means that interest and fees can no longer be collected on her HELOC, so Plaintiff's argument that Shellpoint made false representations in the Acceleration Letter or subsequent statements regarding the amount owed on her HELOC loan therefore fails. Accordingly, Plaintiff has not stated a claim for an FDCPA violation on behalf of herself and the class, and Count II is dismissed.  Because Plaintiff's individual claim against Shellpoint for violating § 1692f(6) of the FDCPA relies on the same theory, it too fails, and Count VI is also dismissed.

### C.      State Law Claims (Counts III, IV)

Counts III and IV allege that Defendants violated the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, and the Massachusetts Debt Collection Regulations, 209 C.M.R. 18.18, .19, .23, .24.  [Am. Compl. ¶¶ 85–110].  Because the court has now dismissed the only

claim over which it has original jurisdiction, it declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  See 28 U.S.C. § 1367(c)(3) (stating that "district courts may decline to exercise supplemental jurisdiction if … the district court has dismissed all claims over which it has original jurisdiction"); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1996) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").  Plaintiff's state law claims, Counts III and IV, are therefore dismissed without prejudice.

### D.     Declaratory Judgment (Count I)

Count I, a claim for declaratory judgment, is premised on the same legal theory as Plaintiff's FDCPA claim, namely that Defendants cannot collect interest and fees that accrued during the period when Plaintiff did not receive periodic statements.  [Am. Compl. ¶¶ 68–75].  Plaintiff seeks a declaration "that all interest and fees assessed to discharged HELOCs during any time in which Shellpoint or its predecessors-in-interest failed to provide statements are waived and/or unenforceable."  [ECF No. 31 at 19]; [Am. Compl. ¶ 75].  The Declaratory Judgment Act authorizes courts to "declare the rights and other legal relations of any interested party seeking such a declaration" when there is a "case of actual controversy."  28 U.S.C. § 2201(a).  "The Act creates a remedy, not an independent source of subject-matter jurisdiction." Sandoz Inc. v. Amgen Inc., 773 F.3d 1274, 1277 (Fed. Cir. 2014) (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950)); see also O'Brien v. Wilmington Trust Nat'l Ass'n, 506 F. Supp. 3d 82, 93 (D. Mass. 2020) ("[T]he Declaratory Judgment Act [does] not create an independent federal cause of action for state-law claims.") (citing Buck v. Am.

Airlines, Inc., 476 F.3d 29, 34–35 (1st Cir. 2007)).  There is no controversy where "[n]o defendant ha[s] wronged the plaintiff or ha[s] threatened to do so."  MedImmune, Inc., v. Genentech, Inc., 549 U.S. 118, 133 (2007) (first alteration in original) (quoting Willing v. Chicago Auditorium Ass'n, 277 U.S. 274, 288 (1928)).  Because Plaintiff has not offered a viable legal theory under which Defendants are liable, she cannot obtain a declaratory judgment against them.  Accordingly, Count I is also dismissed.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss, [ECF No. 26], is **GRANTED** and Plaintiff's Amended Complaint is **DISMISSED** without prejudice.  If Plaintiff can cure the deficiencies of the Amended Complaint as discussed herein, she may file a second amended complaint within 21 days.  If Plaintiff does not file an Amended Complaint within 21 days, the Court will dismiss the federal law claims with prejudice and relinquish supplemental jurisdiction over the state law claims.

**SO ORDERED.**

January 26, 2026                                    */s/ Allison D. Burroughs*
                                                    ALLISON D. BURROUGHS
                                                    U.S. DISTRICT JUDGE